**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Graphic Communications Conference,** | : | **Civil Action** |
| **Local 8N, International Board of** | : | |
| **Teamsters,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | **No. 06-5452** |
| **Bucks County Courier Times, et al.,** | : | |
| **Defendants.** | : | |

---

**MEMORANDUM AND ORDER**

GENE E.K. PRATTER, J.                                              AUGUST 13, 2008

Graphic Communications Conference, Local 8N, International Brotherhood of Teamsters ("Local 8N") sued the Bucks County Courier Times and Courier Times, Inc. ("Courier Times") to compel arbitration, pursuant to 9 U.S.C. § 4, for alleged breaches of the parties' collective bargaining agreement ("CBA").

The Courier Times has filed a Motion for Summary Judgment (Docket No. 29), and Local 8N opposed that motion and has responded with its own Motion for Summary Judgment to Compel Arbitration (Docket No. 36). Local 8N argues that (1) each of the grievances at issue[1] related to a subject the parties have agreed in the CBA to arbitrate; (2) the timeliness of the

---

[1]This case stems from the Courier Times' refusal to arbitrate four union grievances due to what the company argues was untimely filing by Local 8N. The union asserts that the Courier Times improperly adjusted employees' wages under the CBA, inadequately supervised employees working on a particular press, did not pay eligible employees a shift differential, and wrongly issued a warning to employee Mark Reynolds. The Court's decision turns on timing under the CBA, so the merits of the specific grievances are not at issue here.

1

grievances is a procedural issue to be decided by the arbitrator; and (3) even if timeliness is a substantive issue for the Court to decide, each grievance was filed within the CBA deadlines. The Courier Times counters that (1) timeliness under the CBA deadline provisions is a substantive issue to be decided by the Court; (2) Local 8N waived the grievances at issue by filing them after the CBA deadline; and (3) applicable law does not recognize continuing grievances that could extend the CBA deadline.  Local 8N and the Courier Times agree that no material fact is in dispute for purposes of resolving this issue as presented by Local 8N in its Complaint.

Based upon Local 8N's own characterization of its claims, the Court must deny Plaintiff's Motion and grant Defendants' Motion.

## II.    LEGAL STANDARD

Upon motion of a party, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  Summary judgment may be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party."  Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).   An issue is "genuine" if a reasonable fact-finder could possibly hold in the non-movant's favor with regard to that issue.  See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A fact is "material" only if it could affect the result of the suit under governing law.  Id.

2

Evaluating a summary judgment motion, the district court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.  Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).  If, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 217, 322 (1986); Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

The party opposing summary judgment must support each essential element of that opposition with concrete evidence in the record.  Celotex, 477 U.S. at 322-23.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).  This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."  Walden v. Saint Gobain Corp., 323 F.Supp. 2d 637, 642 (E.D. Pa. 2004) (citing Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)).

On cross motions for summary judgment, the same standards and burdens apply.  See, Applemans v. City of Philadelphia, 826 F.2d 214, 216 (3d Cir. 1987); Peters Township School Dist. v. Hartford Accident and Indemnity Co., 833 F.2d 32, 34 (3d Cir. 1987).  Cross motions for summary judgment

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waived judicial consideration and determination whether genuine issues of material face exist.

Transportes Ferreos de Venezuela II Ca v. NKK Corp., 239 F.3d 555, 560 (3d Cir. 2001) (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968).  Of course, when presented with cross motions for summary judgment, the Court must consider the motions separately.  See, Williams v. Philadelphia Housing Authority, 834 F.Supp. 794, 797 (E.D. Pa. 1993), aff'd, 27 F.3d 560 (3d Cir. 1994).

## II.    FACTUAL BACKGROUND

To describe the background of this case, the Court sets out those facts of record that are undisputed.  Moreover, when considering each motion the facts are construed in the light most favorable to the non-moving party as to the given motion.  The Court disregards those factual allegations that either party makes without any evidentiary support from the record.  See, Celotex, 477 U.S. at 322-23; Jones v. United Parcel Service, 214 F.3d 402, 407 (3d Cir. 2000) (requiring more than "unsupported allegations" to defeat summary judgment).  The Court has accepted as true all other factual contentions made by the non-moving party and construed them in the light most favorable to that party.

### A.    Bucks County Courier Times and the Collective Bargaining Agreement

The Courier Times prints and publishes a daily newspaper.  (Defendants' Statement of Undisputed Facts in Support of Motion for Summary Judgment ("UF-D") ¶ 1.)  Local 8N is the collective bargaining representative of all full-time and regular part-time pressmen and helpers employed by the Courier Times at its Goeffrey Road facilities in Fairless Hills, Pennsylvania. (Plaintiff's Statement of Uncontested Facts ("UF-P") ¶ 1; Statement of Contested Facts in

4

Opposition to Plaintiff's Motion for Summary Judgment ("CF-D")  ¶ 1.)  The Courier Times and

Local 8N negotiated a collective bargaining agreement ("CBA") that was executed and became

effective on August 28, 2006.  (UF-D ¶¶ 2-3.)  The CBA at issue in this case expired August 27,

2007.  Id. ¶ 4.[2]

The CBA included a grievance and arbitration provision entitled "Article IV: Grievance

Procedure," which provides in full:

| | |
|---|---|
| Section 1. | A grievance is defined as a claim or dispute with the Company by an employee, employees, or the union involving an alleged violation by the Company of the express provisions of this Agreement or a dispute about the interpretation, application, or operation of express provision of this agreement. |
| Section 2. | Step 1. The chapel chairman shall first raise the grievance with the Press Operations Manager within forty-eight hours time of the events giving rise to the grievance.  If the chapel chairman and the Press Operations Manager cannot resolve this dispute, the union shall have the right to appeal the grievance to Step 2. |
| Section 3. | Step 2.  In order for the grievance to be considered further, the union shall reduce the grievance to writing and serve it to the Press Operations Manager within ten days of the time of the events giving rise to the grievance.  The written grievance shall notify the Company of the section or sections of this Agreement that the union believes that the Company has violated.  Upon timely receipt, the Company and the union will convene a Joint Conference Committee; this committee consists of three individuals selected by the Company and three individuals selected by the union.  The Joint Conference Committee shall endeavor to meet within seven days from the date of receipt by the Press Operations Manager of the written grievance.  The Joint Conference Committee shall meet and attempt to resolve the grievance. |
| Section 4. | If the grievance is not satisfactorily adjusted in Step Two, the union may submit the matter to arbitration within ten (10) working days following the Step Two meeting; such submission shall be in writing to the Press Operations Manager. |
| Section 5. | ***The time limitations set forth in this Article IV are of the essence of this*** |

_____

[2]A new contract is now in place which has the same provisions as those at issue here.  Tr. 2/20/08 at 27.  Of course, as the parties acknowledge, neither the fact of the new contract nor the language of its terms is relevant to the issues at hand.

> ***Agreement and are substantive limits; there is no agreement to arbitrate any grievance not processed within the time limits contained herein.*** No grievance shall be accepted by *Bucks County Courier Times* unless it is submitted or appealed within the time limits set forth in this Article.  If the grievance is not timely submitted at Step 1, it shall be deemed waived.  If the grievance is not timely appealed to the next Step, it shall be deemed to have been settled in accordance with the Company's answer at the previous Step.  By mutual written agreement, any of the time limitations set forth in this Article IV may be extended.

Plaintiff's Motion for Summary Judgment to Compel Arbitration ("MSJ-P"), Ex. 3 (emphasis added).  The language above was accepted by both the Courier Times and Local 8N on or before May 2, 2006.  (UF-D ¶¶ 10-11.)

The bargaining-unit employees elected Robert Litton to be chapel chairman under the CBA.  (UF-P ¶ 8.)   When the chapel chairman is not present, the vice chairman represents the union.  (UF-D ¶ 49.)

Mr. Litton acknowledged in his deposition that the union must follow the time limits of the grievance procedure lest the grievance become "null and void" and thus be "waived."  (UF-D ¶ 45.)  Mr. Litton understood the term and concept of  "waived" to mean an inability "to move forward with the grievance."  (UF-D, Ex. 41 (Litton Depo. Tr. 61).)

**B.     Improper Wage Adjustment Grievance**

The Courier Times issued the first paychecks under the CBA on September 13, 2006.  (UF-P ¶ 9.)  Thus, practically speaking, the first time a bargaining unit employee could have noticed a purportedly improper wage adjustment under the CBA was September 13, 2006.  (UF-D ¶ 17.)  Mr. Litton received a voucher for his paycheck on September 16, 2006 and believed that the wage adjustment called for in the CBA was not made.  (UF-P ¶¶ 10-11.)  At that time,

Robert Campbell was the press operations manager, but he was unable to work from September 17 until October 11, 2006 and was not present at work during that time period.  Id. ¶¶ 13-14.[3]

On or about September 18, Mr. Litton submitted a written grievance addressed to Mr. Campbell stating: "I am requesting a meeting of the Joint Conference Committee to resolve the following grievance: improper wage adjustments.  Wrongful implementation of wage rights under Article XII [sic], Scale of Wages.  (but not limited to)."  (UF-D ¶ 16; UF-P ¶ 18.)  Mr. Litton asserts that he made a "typographical error" in the letter by citing Article XII of the CBA rather than Article XIII: Scale of Wages.  (UF-P ¶ 20.)  By a letter dated October 12, counsel for Local 8N demanded that the wage increase issue be submitted to arbitration.  (UF-D ¶ 18) ("Accordingly, please allow this letter to serve as a demand submission for arbitration concerning the Company's **Implementation of incorrect wage increases**.")

On October 23, the company's operations manager, Mr. Warner, responded to Mr. Litton's letter, explaining that the grievance was without merit and, regardless, was not arbitrable.  In particular, the Warner letter stated:

Further be advised that the grievance is procedurally defective in that Step 1 was not

---

[3] Mr. Litton asserts that he approached his shift supervisor, Michael Aspell, on September 17, 2006 to ask him to contact Mr. Campbell or operations manager Todd Warner regarding the wage dispute and a grievance involving a warning given to Mark Reynolds.  Id. ¶ 15. Mr. Litton maintains that he was told to call on September 18, 2006 to schedule an appointment.  Id. ¶ 16.

The Courier Times disputes the allegations regarding Mr. Litton's communications on September 17.  See, CF-D ¶ 15.  In particular, it denies that Mr. Litton approached Mr. Aspell on September 17, 2006 to discuss any of the grievances at issue in this action, that Mr. Litton asked Mr. Aspell to call either Mr. Campbell or Mr. Warner, or that Mr. Aspell told Mr. Litton to call anyone on September 18.  (Statement of Additional Undisputed Facts ¶¶ 55-57.)

Although these facts remain in dispute, they are not material because, as explained in note 1, supra, the disputed actions at issue occurred outside the 48-hour window for filing a grievance as outlined in Article IV, Section 1 of the CBA: Grievance Procedure.

followed.  Furthermore, it is procedurally defective because it fails, in accordance to Article IV, Section 3, to "notify the Company of the section or sections of this Agreement that the union believes that the Company has violated."  The union is obligated to put the Company on notice as to the precise section(s) of the Contract it believes to have been violated.  You are not permitted to add a catch all "but not limited to."  Due process requires that you put us on notice of all sections in the written grievance.

Because the time limits in Article IV are substantive, the above-referenced grievance is not arbitrable.

(UF-D ¶ 19.)  Mr. Warner provided a copy of this letter to Paul Montalbano, Esquire, counsel for

Local 8N.  (UF-P ¶ 23.)  Mr. Montalbano replied in a letter dated November 3, stating:

While Local 8N clearly recognizes the Company's rights to assert procedural and substantive arguments regarding grievances and arbitration, such positions do not operate to terminate the grievance and arbitration procedure.  Rather, they are merely arguments that may be presented to the Arbitrator in defense of the grievance.

(UF-D ¶ 21.)  Mr. Warner replied on November 9 stating that "the time limits and the procedural

requirements were made substantive....Thus, the referenced grievances are substantively not

arbitrable."  Id. ¶ 22.

Mr. Warner has since testified that the Courier Times determined that the wage

adjustment grievance was not arbitrable because the grievance was not presented within the

deadlines specified in the grievance procedure and because of the reference to the incorrect

section of the CBA.  See, UF-P, Ex. 20 (Warner Dep. Tr. 26-29).


**C.      Adequate Supervision Grievance**

The Courier Times assigned no supervisor to the B Press beginning August 28, 2006.  Each

day the B Press ran after that date, the pressmen worked without a supervisor.  (UF-P, Ex. 22-23.)  On

September 18, 2006, Mr. Litton drafted a handwritten grievance to Mr. Campbell stating:

I am requesting a meeting of the Joint Conference Committee to resolve the following

> grievance: Failure of the company to provide adequate supervision in accordance with Article
> V, management rights, and Article VII, Discipline and Discharge (but not limited to)

(UF-D, Ex. 19.)  On October 11, Mr. Warner replied in a letter which stated that the complaint lacked

merit because the CBA sections cited did not give the union the power to question the adequacy of

supervision.  In addition, Mr. Warner asserted that the grievance was untimely under Article IV of the

CBA, thus rendering it not substantively arbitrable under the CBA.  (UF-D ¶ 26.)  Mr. Warner's

position was that Local 8N should have filed a grievance within 48 hours of the first B Press shift

lacking a supervisor.  (UF-D ¶ 25.)

Mr. Montalbano wrote to Mr. Warner on October 12 stating that the dispute could not be

resolved in Step 2 of the grievance process and requesting that the Courier Times participate in

arbitration.  (UF-D ¶ 28.)  Mr. Warner replied that the grievance is not substantively arbitrable.  Id. ¶

29.

### D.      Shift Differential Grievance

The CBA contains a shift differential provision in Article XIII, Section 1.  The provision

provides that the Courier Times will pay a set weekly shift differential to employees who are regularly

scheduled to work after 6:00 p.m. two or more days a week and a slightly higher differential to

employees who work between 12:00 a.m. and 4:00 a.m.  (UF-P ¶ 38.)  The Courier Times does not

provide a notice or slip with the employees' paychecks informing them of the shift differential rate,

and the Courier Times did not give notice to the union as to any differential paid to individual

bargaining-unit employees.  Id. ¶¶ 39-40.  However, Mr. Litton acknowledged in his deposition that

he became aware of this purported grievance on September 16, 2006 when he received the voucher

for his own paycheck from September 13, 2006.  (UF-D ¶ 37.)

On October 4, 2006, Mr. Warner met with representatives of Local 8N to discuss the improper wage adjustment grievance, the adequate supervision grievance, and the now moot grievance concerning Mark Reynolds.  (UF-P ¶ 42.)  At that meeting, a discussion concerning the payment of the shift differential occurred.  Id. ¶ 43.  Within 24 hours of that meeting, Mr. Litton sent a letter to Mr. Warner stating:

> I am requesting a meeting of the Joint Conference Committee to resolve the following grievance: Eligible Employees are not receiving Shift Differential as per Article XIII, Scale of Wages. (but not limited to)

(UF-D ¶ 36.)

On October 11, Mr. Warner responded by letter that the grievance was procedurally defective because it failed to follow the timeliness requirements in Step 1 and Step 2 of the grievance procedure.  Id. ¶ 38.  Mr. Warner offered to meet with Mr. Litton to discuss the issue even though he asserted that there was no obligation to convene a Joint Conference Committee.  Id.  Mr. Warner and Mr. Montalbano exchanged several additional letters reiterating their positions.  Mr. Warner continued insisting that the grievances were not substantively arbitrable, while Mr. Montalbano continued seeking to arbitrate the grievances.  Id. ¶¶ 39-41; UF-P ¶¶ 48-50.

This litigation ultimately ensued.

## III.    DISCUSSION

### A.    The Arbitration of Labor Disputes: General Policies

The "arbitration of labor disputes is a federally favored policy."  Controlled Sanitation Corp. V. District 128 of the Int'l. Assoc. of Machinists and Aerospace Workers, AFL-CIO, 524 F.2d 1324, 1328 (3d Cir. 1975).  In fact, to go even further, arbitration is well-known to be the preferred method

for resolving disputes between unions and employers.  Lodge 802, Int'l. Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers, and Helpers, AFL-CIO v. Pa. Shipbuilding Co., 835 F.2d 1045, 1046 (3d Cir. 1987) (citing E.M. Diagnostic Sys., Inc. v. Local 169, Int'l Bhd. Of Teamsters, Chauffers, Warehousemen and Helpers of Am., 812 F.2d 91, 94 (3d Cir. 1987)).  Accordingly, there is a "general presumption favoring the arbitrability of labor matters."  Graphic Communications Int'l Union Local 735-S v. N. Am. Directory Corp., 98 F.3d 97, 101 (3d Cir. 1996).

Although federal policy favors the arbitration of labor disputes, "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit."  United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960).  Thus,

> [t]he mere fact of the existence of an arbitration clause...does not make every alleged grievance arbitrable.  The agreement must embrace the subject matter of the alleged grievance so that it would appear that the arbitrator could make an award.  '[H]is award is legitimate only so long as it draws its essence from the collective bargaining agreement.'

Flintkote Corp. v, Textile Workers Union, 243 F. Supp. 205, 212 (D.N.J. 1965) (quoting United Steel Workers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960)).

The issue of whether particular grievances are arbitrable is a question for the Court, not an arbitrator.  N. Am. Directory Corp., 98 F.3d at 101.  See also, AT&T Technologies, Inc. v. Communications Workers of Am., 475 U.S. 643, 651 (1986).  Congress, through Section 301 of the Labor Management Relations Act, gave the federal courts responsibility for determining whether a party to a collective bargaining agreement has an obligation to arbitrate under the terms of the agreement.  "The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such

a duty." <u>AT&T Technologies</u>, 475 U.S. at 649.

The Court must consider any question of arbitrability within a confined context.  The Court must eschew any evaluation of the merits of Local 8N's grievances because any judicial determination regarding arbitrability should focus only on the agreement, not on the merits of the underlying grievances.  <u>Graphic Communs. Int'l Union, Local 75-S v. N. Am. Directory Corp.</u>, 98 F.3d 97, 99 n.1 ("When deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.") (internal citations omitted). "[T]he court must focus on the collective bargaining unit in question and examine all relevant evidence." <u>Int'l Union of Operating Engineers, Local Union 103 v. Ind. Constr. Corp.</u>, 13 F.3d 253, 256 (7th Cir. 1994) (citing <u>AT&T Technologies</u>, 475 U.S. at 651-52).   "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that it should apply 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" <u>Orlando v. Interstate Container Corp.</u>, 100 F.3d 196, 299 (3d Cir. 1996) (quoting <u>Warrior & Gulf</u>, 363 U.S. at 582-83).

**B. Timeliness and Substantive Arbitrability**

Substantive arbitrability deals with "whether a *particular* dispute is subject to the parties' contractual arbitration provision(s)." <u>Bell Atl.-Pa. v. Commc'n Workers of Am.</u>, 164 F.3d 197, 201 (3d Cir. 1999) (emphasis added).  Courts make determinations of substantive arbitrability, while arbitrators decide procedural matters.  An employer's claim that a grievance was not timely filed traditionally is a procedural matter said to be best left to the arbitrator's determination.  <u>Newspaper Guild of Greater Philadelphia Local 10 v. Cent. States Publ'g</u>, 451 F.Supp 1112, 1116 (E.D. Pa.

1978).

In this case, the Courier Times asserts that the express language of the CBA makes timeliness a substantive matter rather than a procedural one. Specifically, the Courier Times points to Article IV, Section 5 of the CBA, which does indeed state: "The time limitations set forth in this Article IV are of the essence of this Agreement and are substantive limits; there is no agreement to arbitrate any grievance not processed within the time limit contained herein." (MSJ-P, Ex. 3.) The plain meaning of these words is abundantly clear – timeliness is a substantive issue. However, in light of the general support for finding arbitrability and case law supporting the familiar characterization of timeliness as a procedural matter best left to arbitrators, the Court seeks additional guidance for resolving the pending cross-motions.

Parties to a CBA certainly can contract for specific issues and disputes to remain outside the scope of an arbitrator's jurisdiction. The Third Circuit Court of Appeals explained that "the normally favored 'presumption of arbitrability,' in section 301 labor relation cases, [may be] overcome by language in a collective bargaining agreement circumscribing the jurisdiction of a dispute resolution body." N. Am. Directory Corp., 98 F.3d at 98. The court also embraced this view in Local 827, Int'l Bhd. of Elec. Workers, AFL-CIO v. Verizon New Jersey, Inc., 458 F.3d 305 (3d Cir. 2006), in which the court held:

> ...the presumption of arbitrability does not apply in all circumstances. Where the arbitration provision is narrowly crafted, "we cannot presume, as we might if it were drafted broadly, that the parties here agreed to submit all disputes to arbitration...."

458 F.3d at 310 (quoting Trap Rock Indus. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 888 n.5 (3d Cir. 1992)).

The Courier Times argues that the Grievance and Arbitration clause of the CBA is narrowly

drafted and thus should be narrowly interpreted.  The clause clearly defines a grievance as " a dispute based on an express provision of this agreement."  (MSJ-P, Ex. 3.)  Furthermore, the clause limits the powers of an arbitrator so that an arbitrator is prohibited from adding to, subtracting from, or modifying the terms of the CBA.  Id.  Such constricting language is further evidence of a narrow arbitration clause.  See, Verizon New Jersey, 458 F.3d at 310.

Finally, the Courier Times references Wyandot Inc. v. Local 227, United Food and Commercial Workers Union, 205 F.3d 922 (6th Cir. 2000).  In Wyandot, the Sixth Circuit Court of Appeals examined a grievance and arbitration clause *less* explicit than the one at issue.  The clause contained specific time limits and stated that failure to follow such limits would result in the disposal of a grievance.  However, the clause in that case, unlike the present case, did not contain the word "substantive."  See, 205 F.3d at 924-25.  Still, the court found the time limit to be substantive;

> it is important to note that while the Union characterizes the time deadline as "procedural" it is not truly so, the time limit set forth in the agreement is not analogous to a statute of limitations.  Rather, the time bar is explicitly set forth in the Agreement and presumably was a bargained-for provision.  In this sense, the deadline for filing grievances is substantive, not procedural.

Id. at 928 n.2.

The Courier Times asserts that the "CBA is clear and unambiguous regarding the arbitrability of any of the four grievances; there is an agreement not to arbitrate any of them."  (MSJ-D at 12.)  The Courier Times relies again on Verizon New Jersey, which states:

> [i]f a contract "is explicit and unambiguous regarding whether the Grievance is arbitrable, there is no need to look to extrinsic evidence."...Insofar as the existence of contract interpretations of the arbitration clause suggests that there may be a modicum of ambiguity in the language of the arbitration clause we note that "a compelling case for nonarbitrability should not be trumped by a flicker of interpretive doubt."

458 F.3d at 312 (internal citations omitted).  Local 8N has not offered the Court any reason for

interpretive doubt concerning Article IV, Section 5.  Rather, Local 8N largely avoids discussing the section in its filings, choosing instead to argue that the grievances at issue are (or should be) arbitrable because of the general policy supporting arbitration and the CBA's seemingly broad reach as to the possible *topics* of grievances.  See, Tr. 2/20/08 at 5, lines 21-25, & 6, lines 1-4.  Even when viewed in the light most favorable to Local 8N, indeed, even if it is light artificially favorable to the union, the evidence does not support the conclusion urged by the union that is virtually forbidden by the clear language of the CBA, to wit, that time deadlines contained in the CBA are somehow procedural.  Accordingly, the Court finds that, as stated in the CBA, timeliness is a substantive issue.

## C.      Timeliness of the Alleged Grievances

### I.      Improper Wage Adjustment Grievance

Local 8N asserts that Mr. Litton met all deadlines for filing a grievance for an allegedly improper wage adjustment in his September 13, 2006 paycheck.  Mr. Litton received his pay voucher on September 16, and on September 18, he filed a written grievance with Mr. Campbell.

The Courier Times asserts that any alleged improper wage adjustment occurred September 13, 2006 when the company issued paychecks, so Mr. Litton, acting as chapel chairman, was required under the CBA to file the related grievance on behalf of the union on or before September 15.  The Courier Times argues in its Opposition Brief that Mr. Litton filed the grievance on behalf of all employees represented by Local 8N.  Because Mr. Litton did not file the grievance within 48 hours *of the issuance* of the allegedly deficient paychecks (arguing that the first union member's knowledge of any problem with compensation would have necessarily been on the date of issuance, to wit, September 13), the grievance is substantively barred as untimely.  Because timeliness is a substantive

issue under the CBA, Mr. Litton's failure to file the grievance on or before September 15 would render the grievance waived and, thus, not arbitrable.

However, Local 8N argues that Mr. Litton filed the grievance on his own behalf, not on behalf of all employees represented by the union. Local 8N asserts that because Mr. Litton filed the grievance within 48 hours of *his* having received his pay voucher and noticing an apparent discrepancy in his pay rate, the grievance was timely filed and remains arbitrable. Tr. 2/20/08 at 31, lines 22-24 ("He filed his grievance on behalf of himself. It's his grievance.")

The Courier Times denies that Mr. Litton filed the grievance only on his own behalf. In support of its position, the company cites the written grievance itself and a related letter from the union's counsel. First, the written grievance filed by Mr. Litton on September 18 states: "I am requesting a meeting of the Joint Conference Committee to resolve the following grievance: improper wage adjustments. Wrongful implementation of wage rights under Article XII, Scale of Wages. (but not limited to)." (UF-D ¶ 16; UF-P ¶ 18.) Unlike the grievance filed on Mr. Reynolds' individual behalf, which mentioned him by name, <u>see</u>, UF-D, Ex. 26, this wage adjustment grievance does not mention Mr. Litton, by name or otherwise. Also, the wage adjustment grievance includes the word "adjustment*s*," thus suggesting that more than one payment was at issue. The grievance is framed in the same broad language used by Mr. Litton in the adequate supervision grievance, a grievance all parties agree was filed on behalf of a group of employees. <u>See</u>, UF-D, Ex. 19 ("I am requesting a meeting of the Joint Conference Committee to resolve the following grievance: Failure of the company to provide adequate supervision in accordance with Article V, management rights, and Article VII, Discipline and Discharge (but not limited to)")

Second, after Mr. Litton filed the wage adjustment grievance, counsel for Local 8N demanded

in a letter that the wage increase issue be submitted to arbitration.  (UF-D ¶ 18) ("Accordingly, please allow this letter to serve as a demand submission for arbitration concerning the Company's **Implementation of incorrect wage increases**.  The Union is seeking correction of the wage rates and back pay.")   Again, the writing never specifically mentions Mr. Litton by name or otherwise but, rather, references plural "increases" and "wages."

Local 8N has offered no evidence to support its position that Mr. Litton filed the wage adjustment grievance only on his own behalf.  Therefore, the Court is compelled to find that he filed the grievance on behalf of all employees represented by the union.  Because Mr. Litton filed the grievance more than 48 hours after the first union member should have had notice of the alleged problem, the grievance was untimely and, thus, waived.  As a result, the wage adjustment grievance is not arbitrable.

### ii.    Adequate Supervision Grievance

Beginning August 28, 2006, the B Press at the Courier Times was without a supervisor each time the press ran.  On September 18, 2006, Mr. Litton filed a written grievance with Mr. Campbell regarding this lack of supervision.  Local 8N argues that every day the press ran without a supervisor was a continuation of the grievance that reset the substantive deadline.  Therefore, Mr. Litton was not untimely in filing this complaint, and this "continuing grievance" is arbitrable.  The Courier Times counters that the theory of continuing grievances has been rejected in the context of labor disputes, and, accordingly, because the union did not file the grievance within two days of its initial occurrence -- by August 30, 2006 -- Local 8N  waived the grievance.

a.        **Continuing Violation Theory**

Local 8N argues that the "idea of a continuing violation is a concept that is well established in both arbitral and judicial precedents." (MSJ-P at 16.)  The union explains that the "notion of continuing violation is that the act complained of may be said to be repeated from day to day, with each day treated as a new doctrine."  Id.  For support, Local 8N cites three cases without providing substantive discussion or explanation of them for possible application to this case: Agipcoal USA, Inc. v. Int'l Union, UMWA, 877 F.2d 62 (6th Cir. 1989); D.E.I., Inc. v. Ohio and Vicinity Regional Council of Carpenters and Ohio and Vicinity Regional Council of Carpenters, Local 372, 155 Fed. Appx. 164 (6th Cir. 2005); and Monee Nursery & Landscaping Co.v. Int'l Union of Operating Engineers, Local 150, AFL-CIO, 348 F.3d 671 (7th Cir. 2003).

Agipcoal analyzes a petition to vacate an arbitration award and, thus, is a review of an arbitrator's decision rather than a suit in which a union seeks to compel arbitration.  The case involved a situation where a union knew of a potential CBA violation, but, ignoring the CBA's ten-day limitation period, the union waited months before filing a grievance.  The arbitrator rejected the argument that the grievance was time-barred, instead finding that the grievance was continuing and, thus, not yet barred.  877 F.2d at *3.  The crux of the court's decision in Agipcoal was that deference should be given to an arbitrator's decision, a well-established tenet emphasized by the Supreme Court in United Paper Workers Int'l Union v. Misco, 484 U.S. 29 (1987).  While the court in Agipcoal noted that the concept of a continuing violation is "well established in both arbitral and judicial precedents," the court also opined that the arbitrator may well have committed error by applying a continuing violation standard to that labor case.  877 F.2d at *5.  However, the court deferred to the arbitrator's potentially erroneous decision due to the deference afforded to an arbitrator's decision.

18

Id.

DEI is another case involving a petition to vacate an arbitration decision.  DEI relies on the

brief discussion of continuing violations in Agipcoal and the general principle that a court should

defer to an arbitrator's decision.  155 Fed. Appx. at 170-72.

In the Seventh Circuit Court of Appeals case Monee Nursery & Landscaping, the company

moved to vacate an arbitrator's award.  As in the other cases discussed supra, the court deferred to an

arbitrator's decision.  348 F.3d at 677.  In those cases, the alleged "continuing violation" at stake

began at or around the time the union filed its grievance and continued into the future, so the court's

analysis focused on whether the arbitrator could consider happenings *after* the grievance was filed –

and did not focus on the timeliness of a grievance filed on account of *past* happenings.  Id. at 676.

Accordingly, the cases Local 8N offers to support its position actually provide the Court with

insufficient meaningful insight into the issue of whether or not to accept the theory of continuing

violations as it would need to apply to this case.

### b.       Rejection of the Continuing Violation Theory

The Courier Times asserts that courts across the country have rejected the theory of continuing

violations in labor disputes.  For example, in Dudich v. United Auto Workers Local Union No. 1250,

454 F.Supp.2d 668 (N.D. Ohio 2006), the court examined the concept of a continuing violation that

the plaintiff alleged in an effort to overcome the six-month statute of limitations for a "hybrid" suit

brought under Section 301 of the Labor Management Relations Act.[4]  The Dudich court reasoned that

---

[4]A "hybrid' 301 suit is a lawsuit in which an employee sues a union for failing to
represent him or her by neglecting to process a grievance and also sues the employer for a breach
of contract.

if a violation occurred, the plaintiff should have taken legal action to remedy the violation at the time

of the violation.  The company's "continuing violation" was really a one-time violation whose effects

carried on.  The court explained:

> Once the original damage is lodged, the mere fact that the Defendants are "continuing" to
> implement allegedly improper collective bargaining agreements does not convert Plaintiffs'
> loss of jobs into a "continuing violation."

454 F.Supp.2d at 679.

Similarly, in Int'l Longshoremen's Ass'n Steamship Clerks Local 1624, AFL-CIO v. Va. Int'l

Terminals, Inc., 1995 U.S. Dist. LEXIS 9244 (E.D. Va. May 22, 1995), the court declined to find that

the repeated application of a policy regarding timekeeping constituted a continuing breach of a

collective bargaining agreement that would toll the statute of limitations for a hybrid Section 301

lawsuit.  Id. at *15-16.  The court explained that "[s]uch a holding would be contrary to the

underlying policy of federal labor law of the 'relatively rapid disposition of labor disputes.'" Id. at *16

(quoting Int'l Union, United Automobile, Aerospace, & Agricultural Implement Workers of Am.,

AFL-CIO v. Hoosier Cardinal Corp., 383 U.S. 696, 707 (1966)).

Although it is a state court case rather than a federal case, Casner v. Am. Fed'n of State,

County, and Mun. Employees, 658 A.2d 865 (Pa. Commw. Ct. 1995), provides additional support for

the Courier Times' contention that Local 8N's adequate supervision grievance is not a continuing

violation under the CBA.  In Casner, eight workers sued their union seeking to compel it to arbitrate

their claims that it had breached its duty of fair representation.  The union argued that such claims

were time-barred by the statute of limitations, but the plaintiffs asserted that each time they received a

pay check with lesser pay and benefits, the limitations period began anew.  Id.  The court rejected this

argument:

> Petitioners contend that [the union] committed a continuing violation and that their causes of action are ongoing, recommencing with each pay period because Petitioners sustain losses of pay and benefits with each pay check.  We find this position unpersuasive.  Adopting this rationale would effectively render the limitation period for any cause of action alleging loss of payment meaningless when the payment is received on a regular basis.  "The purpose of a statute of limitations is to bar stale claims and avoid problems of proof arising from stale memories."

Id. (quoting Garcia v. Comm. Legal Servs. Corp., 362 Pa. Super. 484, 493 (Pa. Super. Ct. 1987))

(cited with approval in Yingling v. Unum Life Insurance Co. of Am., 959 F. Supp. 251, 259 (M.D.

Pa. 1997) (holding that an insurance company's failure to pay monthly disability benefits was not a

continuing violation of the insurance contract which would render suit timely)).

The Supreme Court recently evaluated the concept of continuing violations in the context of a

Title VII claim in Ledbetter v. Goodyear Tire & Rubber Co., Inc., 127 S. Ct. 2162 (2007).  The Court

criticized the argument that each paycheck constituted an independent and identifiable action,

describing the reasoning as a "fundamental misinterpretation" of precedent.  Id. at 2175.  In

considering the plaintiff's assertion, the Court wrote:

> ...all Ledbetter has alleged is that Goodyear's agents discriminated against her individually in the past and that this discrimination reduced the amount of later paychecks.  Because Ledbetter did not file timely EEOC charges relating to her employer's discriminatory pay decision in the past, she cannot maintain a suit based on that past discrimination at this time.

Id. at 2174.  Again, although the case examines a different statute than the one at issue here, the

reasoning remains informative in the context of labor disputes, and, thus, this litigation.

The Courier Times argues that acceptance of Local 8N's assertion that the adequate

supervision grievance is a continuing violation would permit the avoidance of established labor

tenets.  This would create an unwieldy situation where no grievance involving pay ever would be

untimely, so time limits would be meaningless.

   **c.**  **Adequate Supervision Grievance: Continuing Violation or Individual Action**

  Due to the undeniable support for the rejection of the concept of continuing violations in labor cases, the Court finds that Local 8N's adequate supervision grievance does not constitute a continuing violation.  Accordingly, because the union did not file the grievance on or before August 30, 2006, this grievance is waived.

  **iii.**  **Shift Differential Grievance**

  Any problem with payment of the CBA shift differential first arose when the Courier Times issued paychecks on September 13, 2006.  Mr. Litton admitted in his deposition that he sensed that there was a problem when he received his pay voucher on September 16, 2006.  He said that he noticed that it appeared that the shift differential was not included on the check stub as required under the CBA.  See, MSJ-P, Ex. 8 (Litton Depo. Tr. at 86-87).   Even so, Local 8N argues that the grievance filed October 4, 2006 is timely under the requirements of the CBA.  The union asserts that the shift differential grievance "was not *definitely* known until October 4, 2006," the date of a meeting between union representatives and company management.   MSJ-P at 17 (emphasis added).  Local 8N seems to assert that uncertainty tolled the deadline, but Mr. Litton's acknowledgment that he noticed the alleged problem in September contradicts the union's position.  However, Local 8N also argues that the shift differential grievance is a continuing violation, just as it argued as to the improper pay adjustment grievance.  Accordingly, Local 8N asserts that the deadline resets each time the union employees received a paycheck.

  The Courier Times argues once again that continuing violations do not exist in the context of

labor disputes.  The company asserts that because Mr. Litton was aware of the alleged problem September 16, the grievance Mr. Litton filed on October 4, 2006 is untimely and substantively barred from arbitration.

As discussed above, due to the overarching support for the rejection of the concept of continuing violations in labor cases, the Court finds that Local 8N's shift differential grievance does not constitute a continuing violation.  Because Mr. Litton did not file the shift differential grievance with the Courier Times within the strict time frame of the CBA, the grievance is substantively barred from arbitration.

IV.     **CONCLUSION**

For the reasons set forth above, Defendants' Motion is granted in its entirety, and Plaintiff's Motion is denied.  An appropriate Order consistent with this Memorandum follows.


                                        BY THE COURT:


                                        S/Gene E.K. Pratter
                                        GENE E.K. PRATTER
                                        United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Graphic Communications Conference,** | : | **Civil Action** |
| **Local 8N, International Board of** | : | |
| **Teamsters,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | **No. 06-5452** |
| **Bucks County Courier Times, et al.,** | : | |
| **Defendants.** | : | |

**<u>ORDER</u>**

**AND NOW,** this 13th day of August 2008, upon consideration of Defendants' Motion for Summary Judgment (Docket No. 29) and related documents (Docket Nos. 30-32), Plaintiff's Motion for Summary Judgment (Docket No. 36), and Defendants' Responses in Opposition (Docket Nos. 39-41), **IT IS HEREBY ORDERED** that Plaintiff's Motion is **DENIED**, and Defendants' Motion is **GRANTED**.

The Clerk of Court is instructed to **CLOSE** this case for all purposes, including statistics.

BY THE COURT:

<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
United States District Judge

24